IN THE DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 09-00041 |
| Plaintiff, | ) | |
| vs. | ) | |
| WILLIAM J. DEBENEDICTIS, IV, | ) | **ORDER** |
| Defendant. | ) | |

On September 21, 2009, the Defendant filed a Motion to Suppress, seeking suppression of evidence resulting from "scientific tests conducted on the Defendant on July 5, 2009." See Docket No. 14.[1] The court held hearings on the matter on November 20, 2009, and January 27, 2010. Representing the United States was Special Assistant U.S. Attorney Beth C. Kontny, and attorney Curtis Van de veld appeared on behalf of the Defendant. Upon review of the relevant pleadings, and with due consideration of the testimonies and exhibits presented at the hearings, the parties' argument, and the applicable case law, the court hereby issues the following Order denying the Defendant's Motion to Suppress.

---

[1] Although captioned as a "motion to suppress," the motion requested "a hearing to require the government [to] establish . . . admissibility [of the scientific evidence] prior to trial." Id. at 3. The motion stated that in the absence of such proof, the court should suppress the evidence. Id.

# FACTS[2]

On July 30, 2009, a two-count Information was filed charging the Defendant with Driving Under the Influence and Driving Under the Influence (BAC), in violation of 16 Guam Code Ann. § 18102(a) and (b),[3] as assimilated by 18 U.S.C. §§ 7(3) and 13. These charges stemmed from a two-vehicle collision at the main gate to Naval Base Guam on July 5, 2009. See Traffic Accident Report, Exh. B, at 5. According to the Traffic Accident Report, the Defendant drove a Toyota Corolla and attempted to maneuver a U-turn at the gate when he struck the rear bumper of a Ford Blue Bird van. Id. at 6. Naval patrol officers observed certain indicia associated with alcohol-impaired driving, such as the Defendant having "bloodshot, glassy eyes" and "slurred speech," a "strong odor of an alcoholic beverage" coming from the Defendant's person and vehicle, and the Defendant experiencing "diffcult[y] following simple instructions." Id.

The Defendant was asked to perform a series of Standardized Field Sobriety Tests ("SFSTs"): the Horizontal Gaze Nystagmus ("HGN") test, the Nine-Step Walk and Turn ("WAT") test, and the One Leg Stand ("OLS"). Id. Based on the Defendant's performance on the SFSTs, the Defendant was detained for suspicion of driving under the influence and transported to security headquarters and advised of the Guam Implied Consent Law. Id. at 7. The Defendant consented to a breath test, which was administered using an Intoximeter EC/IR, and registered results of 0.231 and 0.237 BAC. Id.

Thereafter, the Defendant filed the instant Motion to Suppress. See Docket No. 14. The Government filed its response to the motion on September 28, 2009. See Docket No. 16.

---

[2] Because of the limited nature of the legal issues before the court, the facts set forth herein are based primarily on the Traffic Accident Report which was introduced and moved into evidence by the Defendant. These facts merely provide a background for the court's analysis and shall not be construed as conclusive evidence of the Defendant's guilt to the charges. The court is cognizant that the Defendant is presumed innocent unless and until proved guilty beyond a reasonable doubt.

[3] These offenses are Class A misdemeanors. On August 21, 2009, the Defendant orally waived his right to trial, judgment and sentencing before a district judge and consented to proceed before the below-signed magistrate judge. See Minutes, Docket No. 9.

## ANALYSIS

The Defendant's Motion to Suppress[4] appears to argue that testimony concerning the SFSTs and breath test results should not be permitted until the United States establishes that these "scientific evidence" meet the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. V. Carmichael, 526 U.S. 137 (1999). However, at the hearing held on November 27, 2009, defense counsel specifically focused on the admissibility of the HGN test and the breath tests based on the "scientific nature" of these tests.

In Daubert, the Supreme Court stated that Rule 702 of the Federal Rules of Evidence charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. The Supreme Court stated:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Daubert, 509 U.S. at 592-93 (footnotes omitted). The Supreme Court also set forth a non-exhaustive list of factors the trial court should consider when judging the reliability of scientific evidence. These factors are (1) whether the expert's technique or theory can be tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards and controls; and (5) its "general acceptance" in the "relevant scientific community." Id. at 593-94.

In Kumho Tire, the Supreme Court clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. 526 U.S. at 149. The Supreme Court stated the trial judges have "broad latitude" to decide what factors to consider in assessing the reliability of expert testimony. Id. at 152-53.

In response to the teachings of Daubert and Kumho Tire, Fed. R. Evid. 702 concerning

---

[4] The Defendant's motion is more akin to a motion *in limine* to exclude evidence rather than a motion to suppress, since he does not allege an unlawful search or seizure.

expert testimony was revised and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Government contends that an evidentiary hearing to determine the reliability of SFSTs is not necessary since these tests are sufficiently reliable. It cites to the case of Volk v. United States, 57 F. Supp.2d 888 (N.D. Cal. 1999) to support its contention. In Volk, during the course of trial the government laid the foundation of the officer's specialized experience and training that permitted him to recognize indicators of intoxication. Id. at 895. The officer then testified that he received specific training in how to conduct field sobriety tests and that he had performed such tests on approximately 100 people. Id. The defendant made a motion *in limine* to exclude evidence of the field sobriety tests on the basis that said evidence failed to satisfy Daubert. The magistrate judge found that the nature of routine field sobriety testing was sufficiently reliable such that no further Daubert analysis was required. Id. at 895 and note 4. The district judge upheld the magistrate judge's decision not to hold a pretrial hearing prior to admitting the officer's testimony regarding the field sobriety tests. The district judge further stated that although the officer may have received specialized training on how to conduct field sobriety tests, an officer's testimony regarding a subject's performance on these routine field tests are not grounded on concepts so foreign such that a trier of fact would not be capable of properly assessing the probative value of the testimony. Id. at 896.

The court agrees with the Volk decision with regard to WAT and OLS tests of the SFSTs. Neither in his pleadings nor in his argument did the Defendant challenge the admissibility of the WAT and OLS tests. Although the officer herself did not testify as to her qualifications, the Government made an offer of proof that MA2 Sarah Bennett, the patrol officer who conducted these tests, had specialized experience and training that permitted her to conduct SFSTs and administer breath tests using the Intoximeter EC/IR. These qualifications were not challenged by the Defendant. Nevertheless, this does not preclude the Defendant from

challenging during the trial that the officer failed to properly conduct or instruct the Defendant on the performance of said tests. However, such argument goes to the weight of the testimony, not its admissibility under Fed. R. Evid. 702. Finally, routine field sobriety tests rest on common knowledge of the effects of alcohol on a person. "Because psychomotor field sobriety tests are considered non-scientific or non-technical in nature, a description of the test and a defendant's performance on the test may generally be admitted into evidence as lay opinion testimony under Rule 701, without the need for expert testimony." United States v. Nguyen, 2008 WL 540230, *8 (E.D. Cal. Feb. 25, 2008).

With regard to the Defendant's challenge to the admissibility of the HGN test, the court finds this matter to be moot. As the Government stated in its post-hearing brief,[5] the Government does not intend to introduce the HGN test results through MA2 Bennett at trial. See Docket No. 30. Instead the Government may call an expert witness to testify as to the video recording of Defendant's HGN test or it may decide not to introduce the result of the HGN test at all. Id. Based on the Government's representation, no ruling is necessary at this time on the Defendant's challenge to admissibility of the HGN test.

Finally, as to the testimony concerning the Intoximeter EC/IR, even the Ninth Circuit has stated "[t]wenty-five years ago breathalyzers were certified as accurate by the National Highway Traffic Safety Administration of the Department of Transportation. 38 Fed. Reg. 30459 (1973). Their methodology is well-known and unchallenged. See California v. Trombetta, 467 U.S. 479, 481 & 489 (1984)." United States v. Brannon, 146 F.3d 1194, 1196 (9th Cir. 1998) (holding district court did not abuse its discretion in admitting result of uncompleted breathalyzer test). The Defendant has argued that there were four officers present with handheld radios when the breath test was being administered and that the radio frequencies emitted by these radios affected the results of the Intoximeter EC/IR, however, he has presented no facts to support his

---

[5] At the conclusion of the January 27, 2010 hearing, the court gave the parties an opportunity to file post-hearing briefs. The Government had until January 29, 2010 to file its brief, with the Defendant given until February 5, 2010 to file its brief. To date, the Defendant has not filed a post-hearing brief.

contention. Contrary to the Defendant's argument, the two pages of the manual for the Intoximeter EC/IR, which the Defendant himself provided as Exhibit A, states that

> Environments with heavy alcohol vapor, cigarette smoke, high levels of radio frequencies, or magnetic interference should be avoided. . . . **The Intox[imeter] EC/IR is designed such that none of these environmental conditions will affect the results of a test**. However, prolonged exposure of the Intox[imeter] EC/IR to these types of environmental factor may shorten the life of various components including the fuel cell.

Exhibit A (emphasis added). Defense counsel also argued that this manual is inconsistent with a Virginia manual read which states that radio frequencies may affect the result of a breath test. Unfortunately, defense counsel never produced the Virginia manual as an exhibit, nor has he established that said manual is applicable to the Intoximeter EC/IR instrument used by MA2 Bennett to administer the breath test. Lastly, the Defendant argued that the breath test results should not be admitted because MA2 Bennett failed to observe the Defendant for 15 minutes prior to administering the test to ensure that he did not belch, consume food or alcohol, or put anything else into his mouth. While the court notes some discrepancy as to the times noted in the incident report, the Defendant's argument goes to the weight of the testimony and not its admissibility. The Defendant is free to cross examine the officer on these matters at the trial.

## CONCLUSION

Based on the above analysis, the court denies the Defendant's motion to suppress the results of the WAT and OLS tests and the breath tests. With regard to the Defendant's challenge to the admissibility of the HGN test, the court finds this matter to be moot.

IT IS SO ORDERED.



**/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Mar 08, 2010**